UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**EMMITT LEE GRANGER**,                                   Case No. 3:15-cv-00095-KI

                    Plaintiff,                            OPINION AND ORDER

        v.

**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**,

                    Defendant.

Emmitt Lee Granger
11918 SE Division Street #388
Portland, OR 97266

        Plaintiff

Billy J. Williams
United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

Thomas M. Elsberry
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

*Pro se* plaintiff Emmitt Lee Granger brings this action pursuant to section 205(g) of the

Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision

of the Commissioner denying his application for supplemental security income benefits ("SSI").

I affirm the decision of the Commissioner.

## BACKGROUND

Granger protectively filed an application for SSI on December 21, 2010.  The application

was denied initially and upon reconsideration.  After a timely request for a hearing, Granger,

represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on

November 6, 2012.

On February 8, 2013, the ALJ issued a decision finding Granger not disabled within the

meaning of the Act and therefore not entitled to benefits.  This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on

November 17, 2014.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

Page 3 - OPINION AND ORDER

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ identified Granger's severe impairments as follows:  residuals from a fall including status post acetabular fracture and bilateral sacroiliac screw placement, status post open reduction internal fixation of left rib fractures, and left scapula fracture; degenerative disc disease; obesity; cognitive disorder; verbal learning disorder; depression; anxiety; and substance abuse.  The ALJ found these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Given these impairments, the ALJ concluded Granger has the following residual functional capacity ("RFC"):  Granger can perform light work, except he can lift and carry 10 pounds frequently and 20 pounds occasionally; he can sit in two-hour increments for a total of eight hours in an eight-hour day; he can stand and/or walk a total of two hours in an eight-hour day; he can occasionally climb ramps and stairs, but not ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch and crawl; he should avoid unprotected heights and dangerous machinery; he can remember, understand, and carry out simple tasks and instructions typical of a specific vocational preparation level of 1 or 2; he should have only superficial contact with the public; he cannot work where there are requirements of public special negotiation or mediation; he can work in proximity to coworkers but would do best where teamwork is not required; he would do best in jobs that involve hands-on type work versus being given verbal instructions only; and if there are any changes in the work duties, he would require hands-on instruction.

Given this RFC, the ALJ determined Granger could not perform his past work, but could perform other work in the national economy, including small products assembler and electronics worker.

**FACTS**

Granger, a 41-year old man with a GED, has a work history in carpentry and construction. Much of his work history was in prison, while serving a 10 year sentence. While on probation in August 2009, trying to install a window, Granger fell off a ladder nearly 40 feet off the ground. Legacy Emanuel Hospital treated Granger from August 30 until September 19, which included nine days of induced sedation. Granger suffered multiple pelvic fractures, pneumothorax (injury to lung tissue that required surgery), occipital condyle fracture on the left side, scapular fracture, right sacral fracture, bilateral inferior pubic ramus fracture, and left acetabular (hip bone socket) fracture. He was discharged with anti-nausea medications, stool softener, and pain medications.

He received follow-up care at the Legacy Multispecialties Clinic. In September 2009, he was "doing well" but could not bear weight; by November, he had been walking for many weeks and wondered about returning to work. Corey Vande Zandschulp, M.D., informed Granger he could work as soon as he could function through an entire day; the doctor referred Granger to physical therapy.

Granger returned to the emergency room in November complaining of difficulty standing, walking, and impaired speech. He had been taking Valium and Oxycontin since August for his pain, but had not taken those medications that day. The clinical impression was opiate and benzo withdrawal symptoms and Granger was instructed to wean off Valium slowly.

In December, Granger returned to the emergency room complaining of pain in his left hip when climbing into his truck. A left hip x-ray revealed no fracture, normal alignment, and intact hardware. Granger could walk and bear weight as tolerated. At the clinic, five days later he told Dr. Vande Zandschulp that his hip pain had significantly improved, but he still felt pain from the rib fractures. The doctor encouraged Granger to "work aggressively on his rehabilitation." Tr. 696.

In January 2010, in response to Granger's complaints of pain and difficulty walking, the doctor encouraged home exercises. At his March appointment with Dr. Vande Zandschulp, Granger complained of mild pain and stiffness in his hip, but more pain in his chest. He also reported memory problems. The doctor described Granger as "doing well." Tr. 694.

Granger underwent a neuropsychological evaluation in March 2010. Karen Bates-Smith, Ph.D., interviewed and tested Granger and assessed him with a cognitive disorder, verbal learning disorder, depressive disorder, generalized anxiety disorder, and cannabis and alcohol abuse in full sustained remission. She also noted antisocial personality disorder traits. She observed Granger to be pleasant, polite and cooperative, with a somewhat restricted affect. Dr. Bates-Smith believed Granger could understand and remember simple verbal instructions with repetition, his persistence was good, the pace of examination was normal with some latency in responses, but his auditory working memory was borderline and his visual working memory was low average. His full scale IQ was 70.

At his appointment with Dr. Vande Zandschulp in June, Granger continued to complain of rib and hip pain, reported that the pain management clinic would not begin writing prescriptions for him for several months, that the trauma clinic was no longer writing

Page 7 - OPINION AND ORDER

prescriptions, and he requested pain medication.  The doctor agreed to prescribe pain medications

for two months, but encouraged aggressive strengthening and stretching of his hip.

Granger established care with Gresham Troutdale Family Medical Center in July 2010.

He walked with a slight limp, showed good range of motion in his spine, although with

significant paraspinous tenderness; he had normal range of motion in his extremities with the

exception of bilateral hip pain.  Gregory M. Knopf, M.D., thought Granger's multiple injuries

would continue to be problematic, that he should qualify for social security disability, and that he

needed help managing his pain.  Dr. Knopf increased hydrocodone to five times a day,

discouraged use of medical marijuana, and switched Granger's Celexa to Cymbalta.  In August,

Dr. Knopf refilled Granger's hydrocodone prescription and gave him a prescription for

oxycodone for breakthrough pain.  Granger had switched back to Celexa as he found he was too

agitated on Cymbalta.

At his December appointment, a doctor in Dr. Knopf's office reported Granger was

taking 2 oxycodone 3 times a day instead of one 3 times a day, so Granger had run out of

medication.  He reported being in pain all the time.

On January 1, 2011, Granger arrived at Legacy Emanuel Hospital complaining of

swelling and moderate rib pain.  A chest CT and x-ray were normal.  Granger received

prescriptions for Vicodin and oxycodone.

Granger established care at the Rockwood Community Health Center two weeks later.

He reported feeling like the pain management clinic treated him "like some drug addict" so he

did not return.  He thought he would improve with more pills.  Examination of his back was

normal, with paraspinal lumbar tenderness.  Amanda Cort, FNP culd find no objective known

cause for his ongoing pain.  She prescribed hydrocodone.  Granger met with a social worker who

encouraged him to exercise and engage in activities with other people.  He was not sleeping well,

was staying up late on dating sites on his computer, and "loops back often to need to have pain

controlled" and suggesting his doctors were incompetent for refusing him narcotics.  The social

worker described him as "drug seeking and entitled."  Tr. 790.  At his March appointment with

Cort, he reported worsening rib pain, but she noted he "actively abducts lt shoulder well above

90 degrees as he lifts his shirt."  Tr. 818.  She referred Granger to orthopedics to consider

removing the hardware in his chest.  Cort continued to prescribe narcotics, but warned him in

August that she would stop prescribing narcotics if he continued to smoke marijuana.  He sought

a new primary care physician in October, complaining about Cort's conclusion that he violated

the narcotics contract again.

Reference is made in the medical records to Granger having the hardware removed from

his chest, at which time he contracted MRSA.  However, these records are not included in the

transcript.

Granger returned to the Rockwood Community Health Center in March 2012 and

established care with Brian Frank, M.D., who noted soft tissue tenderness at the anterior

shoulder.  Dr. Frank referred Granger to physical therapy for his rotator cuff syndrome.  He

opined that Granger does have "real reasons for chronic pain" but he was clear with Granger

what the prescription policy was.  Tr. 805.  At his follow-up, Granger had not started physical

therapy, was buying pain medication off the streets plus using marijuana to control his pain, and

complained of foot pain.  Dr. Frank diagnosed plantar fasciitis and recommended foot exercises;

he also explained that he could not prescribe pain medications unless Granger was clean.  In

September, Granger asked Dr. Frank to give an opinion on his disability.  Dr. Frank offered

Granger the number for pain management, which Granger denied.  Dr. Frank wrote a letter

"without specific opinions as I have no objective evidence of the pt's disability."  Tr. 793.

## DISCUSSION

I.      New Evidence

Granger submits letters from Thomas D. Harburg, M.D., dated January 22, 2014,

December 1, 2014, January 20, 2015, and May 1, 2015, in which Dr. Harburg opines that

Granger suffers from a traumatic brain injury, chronic back pain, and rib pain and opines that

Granger cannot hold a job.  The Commissioner notes the record does not contain any treating

records from Dr. Harburg.  Granger explains Dr. Harburg has been treating him the past two

years.

Under 42 U.S.C. § 405(g), this court may remand a proceeding "upon a showing that

there is new evidence which is material and that there is good cause for the failure to incorporate

such evidence into the record in a prior proceeding."  If the evidence did not exist prior to the

Secretary's final decision, good cause exists for the plaintiff's failure to present the evidence.

*Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir. 1984).  Medical reports generated after an ALJ's

decision may be material to a determination of whether the claimant was disabled prior to the

date of the adverse decision.  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).  To be

material, the new evidence offered must bear directly and substantially on the matter in dispute.

*Burton*, 724 F.2d at 1417.

Dr. Harburg's letters are conclusory and immaterial to the period at issue.  Dr. Harburg

gives no support for his conclusion that Granger is mentally incapable of holding a job; in fact,

Page 10 - OPINION AND ORDER

he references Granger's neuropsych testing for support, when Dr. Bates-Smith–the doctor who performed the testing–found Granger capable of performing simple tasks.  Further, the letters provide no support for the doctor's conclusions and reference the same impairments assessed by Granger's other physicians, without indicating any degenerative process has worsened his symptoms.  Finally, the letters are dated well after the ALJ's decision.  Thus, they do not "bear directly and substantially on the matter in dispute" nor do they show there is a reasonable possibility that the ALJ would have found Granger disabled.  *Burton*, 724 F.2d at 1417.  Granger's new evidence is not a reason to remand the decision to the ALJ.

II.     Residual Functional Capacity

Granger contends his impairment affects his ability to walk, sit, stand and even lie down.  The ALJ concluded Granger is not precluded from engaging in work consistent with the RFC.  To support his conclusion, the ALJ relied on statements Granger made to his medical providers–including Granger's inquiry about when he could return to work–as well as medical evidence suggesting improvement–such as Dr. Vande Zandschulp's advice to aggressively strengthen and stretch.  In addition, the ALJ noted Granger's failure to comply with pain management and physical therapy as evidence that his symptoms were not as severe as he represented.  The ALJ relied on Granger's ability to prepare simple meals, vacuum and clean, take laundry to the laundromat, mow the lawn sometimes, chat with others on the internet, date, and drive, all of which suggested his impairments were not as severe as he described them to be.  Finally, the ALJ referred to Granger's statement that in January 2011 he had "several businesses," but that "the economy and the fact that one of his workers was involved in a sexual harassment charge" had "cost him," which suggested Granger's inability to work was not

necessarily related to his impairments. Tr. 27, 790. These are all clear and convincing reasons

for concluding Granger can perform work within the limits of the RFC. *See Robbins v. Soc. Sec.*

*Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (ALJ must make "specific findings as to credibility and

stat[e] clear and convincing reasons for each").

      With respect to the medical evidence, Granger points to Dr. Knopf's remark that Granger

should qualify for social security disability. The ALJ properly concluded Dr. Knopf's statement

in the July 2010 medical record–which was his first appointment with Granger–was conclusory

and unsupported by Dr. Knopf's examination findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.

2007) (ALJ may reject treating physician's opinion by providing specific and legitimate reasons

supported by substantial evidence in the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

Cir. 2008) (a physician's opinion of disability may be rejected if it is "based to a large extent on a

claimant's self-reports that have been properly discounted as incredible"); *Batson v. Comm'r of*

*the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ is not required to accept the

opinion of a physician, even a treating physician, if the opinion is "conclusory, brief, and

unsupported by the record as a whole").

      Granger argues he is unable to appropriately interact with people because of his pain,

mobility, and muscle spasms. Again, however, the RFC accounts for Granger's limitations to the

extent they are consistent with the medical and other evidence. SSR 96-8p, 1996 WL 374184, at

*5 (July 2, 1996) ("RFC assessment must be based on *all* of the relevant evidence in the case

record"). Specifically, the ALJ eliminated work requiring more than superficial incidental

interaction with the public, as well as work requiring public special negotiation or mediation.

The ALJ found Granger capable of working in proximity to coworkers, but not in situations

requiring teamwork.  The ALJ relied on the opinions of State agency psychologist consultants,

who noted pain may occasionally cause irritability and anger.  The ALJ also noted Dr. Bates-

Smith's report in which she stated Granger was polite, pleasant and cooperative.  Granger

himself testified he got along with others well.  In fact, Granger reported dating and chatting with

others online and on the phone.  In sum, an ALJ is not required to incorporate limitations that are

not supported by substantial evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir.

2001).

III.     Worsening Condition

Granger insists his condition has worsened since he filed his application for SSI.  If this is

the case, Granger's remedy is to file a new application for benefits.

**CONCLUSION**

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards.  For these reasons, the court affirms the decision of the

Commissioner.


IT IS SO ORDERED.

DATED this ___13th___ day of January, 2016.


_/s/ Garr M. King_____
Garr M. King
United States District Judge